**Sidney M. HAIS, et al., Appellants,**

v.

**Robert E. SMITH, Appellee.**

**Robert E. SMITH, Appellant,**

v.

**Sidney M. HAIS, et al., Appellees.**

**Nos. 87–182, 87–183.**

District of Columbia Court of Appeals.

Argued May 16, 1988.

Decided Sept. 21, 1988.

Maureen C. Crucetti, with whom Leonard C. Collins, Washington, D.C., was on the brief, for appellants, cross-appellees.

Robert E. Smith pro se.

Before MACK, NEWMAN and BELSON, Associate Judges.

PER CURIAM:

This appeal arises as a result of a default on a loan made in 1979 by Sidney and Roxcey Hais to Robert Smith and his wife at that time, Theresa. The loan called for monthly interest payments with the principal due one year later; it was secured by the Smiths' residence at 13 Seventh Street, S.E. In August 1981, payments on the loan stopped. Shortly thereafter, the Smiths separated and ultimately divorced. Pursuant to the separation agreement, Mr. Smith retained the residence.

---

In May 1981, Mr. Smith delivered to Mrs. Smith a cashier's check in the amount of $24,200 and made payable to Sidney Hais. Mrs. Smith met with the Haises but would not unconditionally tender the check. Subsequently, Mrs. Smith forged Hais' signature on the check and converted the funds to her own use. In July, she wrote Hais a personal check for $16,500 which Hais applied toward the outstanding balance on the loan. In October 1981, the balance still unpaid, Hais began foreclosure proceedings against Mr. Smith. Smith for the first time learned that his ex-wife had not tendered the cashier's check. This litigation followed.

Mr. Smith filed a complaint against Hais alleging fraud and misrepresentation in the formation of the loan agreement and that the agreement violated the District of Columbia Money Lender's Act. He also alleged that in proceeding with the foreclosure, the Haises had intentionally inflicted emotional distress. The Haises countersued for the balance due under the promissory note plus interest and attorneys' fees. A default judgment was entered against Theresa Smith who was no longer in the jurisdiction.

Prior to trial the parties agreed to a partial settlement. Smith agreed to pay $22,000 to the Haises. In return, they agreed to freeze the accruing interest on any amounts still in dispute. After a non-jury trial, the court found that Mr. Smith had defaulted on the loan but also that Mr. Hais became almost a "silent partner" to the fraudulent conduct of Mrs. Smith. The court found against Smith on the fraud, misrepresentation and intentional emotional distress counts. The trial court entered judgment for Smith in the amount of $715. The court subsequently amended the judgment due to an error in mathematical computations and awarded the Haises $4,703.

## I.

In its oral findings, the trial court strived for a type of Solomonic justice. There was no real dispute that Mr. Smith had defaulted on the loan but the trial court, in light of Mrs. Smith's fraudulent activity, sought to avoid the seemingly harsh consequences of this conclusion. The court was disturbed by the meeting between Mrs. Smith and the Haises. It concluded that Mr. Hais' behavior "would almost make him a silent partner in Mrs. Smith's fraudulent conduct and intentions...." Thus, the trial court, though it had no supporting case law, found that "under [the] circumstances Mr. Hais had a duty to take reasonable steps and precautions to prevent the perpetration of this fraud by Mrs. Smith...." This duty, the trial court found, flowed from the business relationship which Mr. Hais had formed with the Smiths. Thus, having concluded that Mr. Hais breached a duty, the court found that Mr. Smith was "entitled to have his obligation as it existed on the note, credited with the payment of $24,200 as of May 14th, 1981," the date the court determined to have been the time of the meeting between Mrs. Smith and the Haises.

■ Simply put, there exists no such duty as the court found here. While good judgment or a kind heart might have dictated that Mr. Hais inform Mr. Smith of Mrs. Smith's conduct regarding the cashier's check, he was under no legal obligation to do so. We have not been made aware of nor have we been able to find a case in which a court has found that a lender has a duty to prevent unfair dealings between co-obligors. We are unwilling to create such a duty.

■ Appellant Smith suggests that the duty here arose from the "implied duty of good faith and fair dealing" present in every contract. Appellant is correct that " 'in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.' " *Uproar v. National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir.) (citations omitted), *cert. denied*, 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393 (1936). This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect per-

formance or interfering with the other party's performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981). We are not prepared to say, however, that it requires a creditor to ensure fair dealings between co-debtors.

## II.

Accordingly, the decision of the trial court is affirmed in all respects [1] with the exception that insofar as Mr. Smith's liability on the loan was reduced by a credit of $24,200, the decision of the trial court is reversed and the case is remanded for computation of damages consistent with this decision.

*So ordered.*

---

1. The trial court ruled that, "under the circumstances," each party "should be required to bear their own attorney's fees." We find no abuse of discretion in this conclusion.