**CLIFTON TERRACE ASSOCIATES, LTD., Plaintiff,**

v.

**UNITED TECHNOLOGIES CORP. and Otis Elevator Co., Defendants.**

**Civ. A. No. 89–1030–OG.**

United States District Court, District of Columbia.

Jan. 10, 1990.

Christopher Hornig, Patricia Mullahy Fugere, Reno, Cavanaugh & Hornig, Washington, D.C., Kerry Alan Scanlon, Washington Lawyers' Committee for Civil Rights Under Law, (of counsel), for plaintiff.

Peter F. Healey, Carl T. Rowan, Jr., Lawrence G. Brett, Reed Smith Shaw & McClay, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This is an action brought by the owner of an apartment complex against the Otis Elevator Company, alleging that the latter's refusal to repair the elevators in the complex amounts to unlawful discrimination. Before the Court is defendant Otis Elevator's motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. Upon consideration of defendant's motion, plaintiff's opposition thereto, and the arguments of counsel in open Court, the Court concludes that defendant's motion is properly granted. Accordingly, the Court dismisses plaintiff's complaint.[1]

---

1. Also named as a defendant in this action is United Technologies Corporation ("UTC"), the parent company of Otis Elevator. Since the ruling on the instant motion disposes of this case, it is not necessary for the Court to decide UTC's Motion for Summary Judgment or in the Alternative to Dismiss for Lack of Personal Jurisdiction.

## I. BACKGROUND

Plaintiff is the owner of Clifton Terrace Apartments ("Clifton Terrace"), a housing complex located in the predominantly minority neighborhood of Columbia Heights in the District of Columbia. Plaintiff alleges that Otis Elevator ("Otis") refuses to repair or maintain the elevators in Clifton Terrace because the residents therein are primarily black, handicapped, or elderly. Plaintiff claims that this refusal to deal constitutes unlawful discrimination in violation of federal and state laws and seeks declaratory and injunctive relief that would require Otis immediately to repair and thereafter to service the elevators at Clifton Terrace. Plaintiff also seeks compensatory, punitive, and treble damages, although in no specified amounts.

The key facts are largely undisputed. In November, 1971, Otis installed six elevators in the five-story Clifton Terrace complex. Under contract, Otis serviced these elevators from 1971 until 1980. On July 23, 1980, Otis was notified by letter from the previous owner of Clifton Terrace, Hunneman Investment Management Corporation, that this maintenance contract would be terminated effective August 23, 1980. Otis was advised that the contract was awarded to another company as of September 1, 1980. There is no contract between the parties to the instant dispute.

Plaintiff Clifton Terrace Associates, Ltd. ("Clifton Associates") is a private partnership that purchased Clifton Terrace from the Department of Housing and Urban Development ("HUD") in 1983. Plaintiff admits that elevator service has been intermittent since that time, claiming that companies other than Otis have "proven incapable of keeping the elevators at Clifton Terrace operational and safe, at a reasonable cost." Complaint at ¶ 14. Plaintiff alleges that when it purchased Clifton Terrace in 1983 it "presumed—and relied on the presumption—that United/Otis' maintenance services would be available" for the elevators in the complex. Id. at ¶ 12. Plaintiff alleges that its employees "repeatedly requested" a bid from defendants to provide elevator repairs, but defendants never responded. Id. at ¶ 16. Defendants' company records reflect no contact between Clifton Terrace and Otis representatives from the time of the contract's cancellation in 1980 until September 20, 1988.

On September 20, 1988, George Marshall, a principal of Clifton Associates, telephoned Paul Ammermuller, Otis's District Service Manager for the Washington District. According to plaintiff, Mr. Ammermuller "promised to provide an inspection and repair proposal within two weeks," but did neither. Complaint at ¶ 17. According to defendants, Mr. Ammermuller advised Mr. Marshall that plaintiff would first need to furnish written credit references and other information, which Otis never received. Having received nothing, Mr. Ammermuller assumed that Mr. Marshall was no longer interested in contracting with Otis. Defendant Otis Elevator's Statement of Material Facts (hereinafter "Otis's SMF"), at ¶¶ 5–8.

On December 6, 1988, the Elevator Supervisor for the District of Columbia informed plaintiff that the elevators in at least one Clifton Terrace complex were hereby "sealed out of service" due to disrepair. Defendant's Motion to Dismiss, Exhibit 2. Ten days later, on December 16, 1988, Mr. Marshall wrote a letter to Otis and sent copies of the letter to five Otis/United Technologies executives. Complaint at ¶ 18; Complaint, Exhibit A. The letter accused Mr. Ammermuller of reneging on his promise to provide an inspection and repair proposal. It further stated, in relevant part:

> We believe Otis has "redlined" Clifton Terrace and is violating the law by intentionally refusing to maintain the elevators because the residents are mostly poor and black.
>
> Otis's refusal to maintain the elevators has greatly damaged the residents and owner of Clifton Terrace. We cannot now quantify the damages to the elderly and handicapped, but they are substantial.
>
> We do not wish a quote on the cost of repairing the elevators. To the contrary, we simply ask that they be repaired

promptly so that the damages will at least not continue. When the elevators are operational, we can at that time discuss who owes what.

We regret the necessity, but we fully intend to pursue any legal options if repairs are not commenced by December 21 and completed shortly thereafter.

The letter further explained that plaintiff would consider joining United Technologies in any lawsuit. Finally, the letter advised:

Because of its history, Clifton is highly visible and is regularly and prominently featured in The Washington Post. The mayor of Washington's ex-wife, who was involved with the property before its purchase by the present Owner, was sentenced to prison for actions related to Clifton Terrace. If the Owner is forced to go to court, there is a great possibility of adverse publicity as well as the expense of defense and the cost of award and/or settlement.

A copy of this letter was also sent to the Elevator Supervisor for the District of Columbia in response to his prior inspection report. Attached thereto was a cover letter from Mr. Marshall, also dated December 16, 1988, which stated: "We share your concern for these elevators, and have been attempting for some time to obtain repairs from Otis. Repairs were promised nearly three months ago." Defendant's Motion to Dismiss, Exhibit 2.

On December 23, 1988 defendants, through counsel, responded to Mr. Marshall's letter of December 16. Defendants' letter explained that credit information was of particular importance in light of their past experience with Clifton Terrace, which showed that payments were frequently several months late and that some contract charges had to be written off as uncollectible. Defendants explained that the necessary credit information promised Mr. Ammermuller in October was never received, and they assumed that Clifton Associates was no longer interested. Defendants concluded: "If you are interested in having Otis perform elevator work, please contact the undersigned." Defendant's Motion to Dismiss, Exhibit 3.

More correspondence, both oral and written and of similar character, ensued. Finally, by letter dated January 31, 1989 defendants informed Mr. Marshall that they saw no reason for continuing discussions. The letter expressed concern for the safety of Otis employees and concern over the "tone" of the parties' recent communications. It stated: "We cannot do business with someone who has repeatedly threatened litigation against us. This situation is not conducive to a sound contractual relationship." Complaint, Exhibit C; Defendant's Motion to Dismiss, Exhibit 6.

Plaintiff filed suit in April, 1989, alleging in a six-count complaint that defendants' refusal to repair and service the elevators at Clifton Terrace is unlawful under the Fair Housing Act (Count I), the Civil Rights Acts (Count II), the D.C. Human Rights Act (Count III), and the D.C. Consumer Protection Act (Count IV). Plaintiff further alleges that defendants' refusal to deal violates implied "warranties of continued service and fair dealing" (Count V) and is unconscionable in violation of public policy (Count VI). The gravamen of plaintiff's complaint is that Otis has refused to negotiate a contract to service the elevators in Clifton Terrace because the residents therein are primarily poor, black, handicapped, or elderly. Otis denies this charge, maintaining that plaintiff's failure to respond to Otis's request for legitimate business information, coupled with plaintiff's belligerent threats of litigation, led to the discontinuance of business discussions.

Otis claims that at least fifteen companies in the Washington area have the capability to service and maintain elevators. Otis's SMF, at ¶ 17 (listing companies). Plaintiff does not deny this. Rather, plaintiff admits—without explanation—that "most if not all of them have in fact also refused to deal with Clifton Terrace." Plaintiff's Opposition to Defendant's Motion to Dismiss (hereinafter "Plaintiff's Opposition"), at 17 n. 11. Plaintiff states that it has sued Otis in part because of its "special duty" arising from having manufactured and installed these elevators. *Id.* Since filing this lawsuit, plaintiff's parent

company has organized its own elevator repair service that is currently working to restore the elevators at Clifton Terrace. Plaintiff concedes that this development may obviate the need for injunctive relief to the extent originally requested, although "technical assistance from Otis may be required in lieu of actual service." *Id.* at 4 n. 3, 9 n. 6.

## II. DISCUSSION

Defendant Otis has moved to dismiss on the grounds that plaintiff lacks standing and has failed to state a cause of action. In the alternative, Otis seeks summary judgment on the grounds that plaintiff has failed to establish a prima facie case of discrimination, while defendant has articulated legitimate business reasons for refusing to contract with plaintiff.

As a threshold matter, defendant argues that plaintiff lacks standing to pursue its claims under the federal statutes. To establish standing sufficient to meet the requirements of Article III of the Constitution, a plaintiff "must allege and prove three elements: (1) personal injury; (2) fairly traceable to the defendant's allegedly unlawful conduct; and (3) likely to be redressed by the requested relief." *American West Airlines, Inc. v. Burnley*, 838 F.2d 1343, 1344 (D.C.Cir.1988), *citing Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Defendant argues that plaintiff's alleged injuries are not "fairly traceable" to Otis's conduct, but instead are traceable to plaintiff's own neglect of the elevators' state of disrepair. In the alternative, defendant argues that this Court should decline jurisdiction as a prudential matter, because plaintiff is not the proper party to assert the legal rights and interests of the Clifton Terrace residents. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (as a general rule a plaintiff must assert his own legal rights and "cannot rest his claim to relief on the legal rights or interests of third parties").

In the Court's view, attempting to analyze whether or not the injuries resulting from the dysfunctional elevators are "fair-ly traceable" to Otis raises problems of legal causation which need not be reached in this case. The issue here is not so much whether Clifton Terrace Associates is the proper plaintiff; the real issue is whether Otis Elevator Company is the proper defendant under the various statutory and common law claims asserted. Resolution of this issue demands that the Court assess the factual and legal sufficiency of plaintiff's claims. In other words, the instant motion is properly decided as one for summary judgment.

■ The standards governing the grant of summary judgment are well known. Once the moving party has shown the absence of evidence to support the nonmovant's case, the onus shifts to the nonmovant to set forth "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *quoting* Fed.R.Civ.P. 56(e). This obligation cannot be met by "mere allegation or denials," but requires a showing by "affirmative evidence" of the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986); *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033 (D.C.Cir.1988). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The only genuine disputed issue in this case involves the reasons for Otis's refusal to enter into a contract with plaintiff. Otis claims its reasons were legitimate; plaintiff claims they were unlawful. Viewing the affidavits and the pleadings as a whole, the Court concludes that plaintiff has failed to set forth any concrete facts to support its claims. Plaintiff's allegations of unlawful discrimination are not only conclusory

and speculative, but belied by plaintiff's own assessment of the case. Each claim of plaintiff's six-count complaint is discussed in turn.

## A. *The Fair Housing Act*

■ In Count I, plaintiff alleges that Otis's refusal to negotiate a contract to service the Clifton Terrace elevators violates several provisions of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.* Plaintiff first alleges violations of § 3604(a) & (b), which states in part:

It shall be unlawful

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny,* a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) ... to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, *or in the provision of services or facilities in connection therewith,* because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a) & (b) (emphasis added). Plaintiff alleges that by refusing to deal with Clifton Terrace Associates, Otis is making dwelling units "otherwise unavailable" to Clifton Terrace residents in violation of § 3604(a) and discriminating "in the provision of services or facilities in connection with the rental of a dwelling," in violation of § 3604(b). Complaint at ¶¶ 30, 31.[2]

Neither the parties nor the Court is aware of any case in which the Fair Housing Act has been construed so broadly as to contemplate the facts alleged by plaintiff in this case. First, it is quite evident to the Court that § 3604(a), on its face, does not apply to this case. The plain language of § 3604(a) refers to the act of making unavailable or denying "a dwelling," and not to the act of making unavailable or denying

any service at a dwelling. *See Southend Neighborhood Improvement Ass'n v. County of St. Clair,* 743 F.2d 1207, 1210 (7th Cir.1984) (plaintiffs failed to state a claim under § 3604(a) where they failed to allege they were "hindered in an effort to acquire a dwelling"). Nothing in the complaint suggests that Otis was in the position of a landlord, with the ability to refuse to sell or rent a dwelling to others. That is what the statutory language clearly contemplates. In short, Otis's alleged refusal to service the Clifton Terrace elevators did not affect the availability of housing in a manner implicating § 3604(a) of the Fair Housing Act. *See id.*

With respect to the "provision of services or facilities" under § 3604(b), plaintiff argues that Otis's refusal to "service" the Clifton Terrace elevators is rendered illegal by this clause. The Court is of the opinion that plaintiff, by invoking a single phrase from this subsection, has construed the statutory language without the slightest reference to statutory context. So construed, the phrase loses all meaning.

Section 3604(b) makes it unlawful to discriminate against "any person" in the terms and conditions of sale or rental, "or in the provision of services or facilities in connection therewith." Read in context, the provision is directed at housing providers, such as owners and landlords. Caselaw supports this reading of the Act. In particular, the "provision of services" language of § 3604(b) has been applied to claims against landlords. *See, e.g., Betsey v. Turtle Creek Assoc.,* 736 F.2d 983, 985 (4th Cir.1984) (section applied to landlord's discriminatory imposition of adults only policy); *Concerned Tenant Ass'n v. Indian Trails Apartments,* 496 F.Supp. 522 (N.D.Ill.1980) (section applied to landlord's reduction of services during transition from white to black tenants); *Khawaja v. Wyatt,* 494 F.Supp. 302, 303 (W.D.N.Y. 1980) (section applied to landlord's eviction of minority tenant for late payment of

---

**2.** Plaintiff also alleges that Otis's refusal to deal violates § 3604(f)(1) & (2), which in nearly identical language makes it unlawful to make services unavailable to, or discriminate against, the handicapped. Complaint at ¶¶ 32, 33. For the same reasons that plaintiff's claims fail under § 3604(a) & (b), the Court finds that plaintiff's claims under § 3604(f)(1) & (2) are similarly without merit.

rent). It has also been applied to claims against municipal service providers. *See, e.g., Southend Neighborhood Improvement Ass'n, supra,* 743 F.2d at 1210 (§ 3604(b) applies "to services generally provided by governmental units such as police and fire protection or garbage collection"); *Mackey v. Nationwide Ins. Cos.,* 724 F.2d 419, 424 (4th Cir.1984) (§ 3604(b) applies "to such things as garbage collection and other services of the kind usually provided by municipalities").[3]

Otis is neither a landlord nor a municipality. Otis is a private service company that offers, under contract, to provide repair services to parts of dwellings. There was no contract in this case. Plaintiff has not pointed to a single case (and the Court is aware of none) in which the "provision of services" by one other than a landlord or municipal service provider was held to fall within the scope of § 3604(b). Plaintiff's counsel at oral argument suggested that private contractors such as Otis are "analogous" to municipalities for the purpose of applying this subsection of the Act. But the Court is not so convinced. It is undisputed that since 1980, when its service contract was terminated by the previous owner, Otis has had no connection—contractual or otherwise—with the provision of services at Clifton Terrace. The Court concludes that Otis's refusal to contract with plaintiff is not contemplated by this subsection of the Fair Housing Act. Accordingly, plaintiff has failed to state a claim under § 3604(b).

Plaintiff also alleges that Otis, by its actions, has interfered with the exercise and enjoyment by Clifton Terrace residents of their rights under the Fair Housing Act. Specifically, plaintiff invokes the Act's civil anti-intimidation provision, 42 U.S.C. § 3617. Complaint at ¶ 34. Section 3617 prohibits retaliation against those who aid others in exercising rights protected by the Fair Housing Act, and states in relevant part:

It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having *aided or encouraged* any other person in the exercise or enjoyment of, any right granted or protected by [the Fair Housing Act].

42 U.S.C. § 3617 (emphasis added). To support its claim under this section, plaintiff posits that "[i]f Otis is shown to be withholding repair services on account of Clifton Associates' having aided or encouraged its tenants or prospective tenants in exercising or enjoying their fair housing rights," then Otis will be liable under § 3617. Plaintiff's Opposition, at 24. Stated another way, plaintiff claims that its business objective as the owner of Clifton Terrace is to aid minority tenants in the enjoyment of housing, and it "is necessarily interfered with in that work by Otis's refusal to provide an essential component of the housing services which white people take for granted." *Id.* at 25.

Plaintiff's argument is without merit, both legally and factually. Once again, plaintiff cites to no authority that would justify construing § 3617 broadly enough to encompass the conduct at issue. As the caselaw relied upon by plaintiff demonstrates, the intimidation or coercion with the exercise of fair housing rights contemplated by § 3617 is far more direct, intentional, and indeed different in kind from that alleged herein. *See, e.g., Evans v. Tubbe,* 657 F.2d 661 (5th Cir.1981) (white defendant erected locked metal gate across residential road, gave key to all whites who owned property along the road, but refused to give key to black plaintiff); *Grieger v. Sheets,* 689 F.Supp. 835 (N.D.Ill.1988) (female tenant was threatened, coerced, and interfered with when landlord demanded sexual favors in exchange for housing repairs and continued tenancy); *Stackhouse v. DeSitter,* 620 F.Supp. 208 (N.D.Ill.1985) (black resident stated a cause of action

---

**3.** Compare *Vercher v. Harrisburg Housing Auth.,* 454 F.Supp. 423, 424–25 (M.D.Pa.1978), where the court noted: "To say that every discriminatory municipal policy is prohibited by the Fair Housing Act would be to expand that Act to a civil rights statute of general applicability rather than one dealing with the specific problems of fair housing opportunities. We do not believe the act was intended to have such a wide scope."

under § 3617 where white resident vandalized and firebombed his car to intimidate him to move out of the community). *See* Plaintiff's Opposition, at 24–25.[4]

Plaintiff has pointed to no persuasive authority that would bring this case within the scope of the anti-intimidation proscription of § 3617. Moreover, plaintiff has failed to point to a shred of evidence from which a reasonable person could conclude that defendant, by not entering into a contract with plaintiff, was somehow trying to intimidate or coerce Clifton Terrace Associates in retaliation for its attempts to assist Clifton Terrace residents in the exercise of their housing rights. Plaintiff may not rely on mere speculative allegations at this juncture but must set forth "affirmative evidence" of the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Thus, even assuming that § 3617 contemplates the facts alleged in this case, defendant is entitled to summary judgment as a matter of law.

### B. *The Civil Rights Acts*

■ In Count II, plaintiff alleges that by its actions, "United/Otis has denied and is denying to the residents and prospective residents of Clifton Terrace, on account of race, the same rights to make and enforce contracts and to lease and hold real property as are enjoyed by white citizens, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1982." Complaint at ¶¶ 37, 38.

Section 1981 provides, in relevant part: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal bene-

fit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .

42 U.S.C. § 1981. Section 1982 provides that all citizens "shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." *Id.* § 1982.

■ As a threshold matter, the fact that plaintiff is a business owned and operated by white individuals does not bar it from bringing a civil rights action in federal court. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9 (1st Cir.1979), *vacated on other grounds*, 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76 (1981). To be sure, plaintiff Clifton Terrace Associates is essentially asserting the rights and interests of third parties—those of the Clifton Terrace residents. It is noteworthy that none of these residents joined as parties to this suit. Plaintiff is not a tenants association that operates on behalf of minority tenants. With respect to its claims under §§ 1981 and 1982, the Court has serious concerns about whether Clifton Terrace Associates is the proper plaintiff to be asserting these claims.[5]

■ Even if the Court assumes that plaintiff has satisfied prudential standing requirements and is allowed to pursue these claims on behalf of the Clifton Terrace residents, plaintiff has nonetheless failed to establish a prima facie case of discrimination under §§ 1981 and 1982. It is well established that in order to prevail under § 1981, a plaintiff must allege and prove purposeful discrimination. *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132

---

**4.** Plaintiff relies on two additional cases to argue that § 3617 "is frequently employed against non-housing providers." Plaintiff's Opposition, at 24. But plaintiff's reliance on those cases is misplaced. First, *United States v. Gilbert*, 813 F.2d 1523 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987) is inapposite; that case was brought under the criminal anti-intimidation provision of the Fair Housing Act, 42 U.S.C. § 3631, and not under civil provision § 3617. Second, in *In re Malone*, 592

F.Supp. 1135 (1984), the district court did not even analyze the § 3617 claim. *See id.* at 1165–66.

**5.** In contrast, this prudential limitation against third-party standing does not apply to plaintiff's claims under the Fair Housing Act. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982).

(1989); *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). The plaintiff bears the initial burden of establishing a prima facie case. *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1232 (D.C.Cir.1984). The parties both agree that these same standards should govern claims under § 1982.

Plaintiff's claims under these statutes are inherently flawed. Plaintiff does not even argue that defendant acted with intentional or purposeful discrimination, but argues instead that Otis's refusal to provide elevator maintenance resulted in an adverse impact on Clifton Terrace residents, who are primarily black, poor and handicapped. By plaintiff's own account, plaintiff

> has alleged and supported a prima facie case. Its tenants are all African–American; it sought services from Otis; Otis was familiar with Clifton Terrace and the race of its tenants; Otis neglected and then rebuffed its requests and generally refused to provide the requested services. Those facts, ... convincingly demonstrate a disproportionate adverse impact on a protected person or class entitling plaintiff to judgment unless defendant were to show a compelling business necessity for its practices.

Plaintiff's Opposition, at 25.

■ Courts have held that summary judgment is appropriate under § 1981 when a plaintiff fails to establish a prima facie case of purposeful discrimination. *E.g., Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 111 (1st Cir.1988); *Bryant v. O'Connor,* 848 F.2d 1064, 1067 (10th Cir. 1988). By plaintiff's own account, this case is not about intentional discrimination. At oral argument, plaintiff's counsel stated that although there "may be" intentional discrimination involved here, plaintiff did not yet know. But a complaint under § 1981 lacks a sufficient evidentiary basis when it is filed in the mere hope that discovery will reveal facts to support its allegations. *Bryant,* 848 F.2d at 1067.

Moreover, the Court is of the opinion that Otis has more than adequately offered the Court a legitimate explanation for its refusal to enter into a contract with plaintiff. The correspondence between the parties reflects that plaintiff failed to pursue a potential contract with Otis in a commercially reasonable manner. *E.g.,* Exhibit A to Complaint, at 2 ("We do not wish a quote on the cost of repairing the elevators. To the contrary, we simply ask that they be repaired promptly so that the damages will at least not continue. When the elevators are operational, we can at that time discuss who owes who what."). The correspondence also reflects, at the very least, that plaintiff pursued the contract negotiations with a litigious mindset. *E.g.,* Exhibit B to Complaint, at 2 ("If the elevators require expensive repairs, and if those repairs were required because of Otis's refusal to provide maintenance, then Otis is liable for the cost of the repairs and for other damages."). Plaintiff maintains that Otis's stated reasons for refusing to contract are merely pretextual. But plaintiff has offered no evidence to support this bald assertion.[6]

Plaintiff insists that a disputed issue of fact exists regarding whether certain financial and credit information was ever demanded from, or given by, plaintiff. Otis maintains that it did not timely receive the requested information from plaintiff. *See* Affidavit of P. Ammermuller ¶¶ 4–6. Plaintiff insists that certain financial information was either timely given or never requested. *See* Declaration of G. Marshall ¶¶ 12–13; Declaration of A. Hanson ¶¶ 2–5; Declaration of J. Womack ¶ 5. From this discrepancy, plaintiff infers that Otis's true reason for refusing to enter into a contract stemmed from a discriminatory animus. But that inference is merely speculative.

---

**6.** The Court cannot ignore the tenor of this correspondence. For example, early on Mr. Marshall made reference to the high visibility of Clifton Terrace, informing these future defendants that the Mayor's wife, "who was involved with the property before its purchase by the present Owner, was sentenced to prison for actions related to Clifton Terrace." Complaint, Exhibit A, at 3. Such threatening innuendos surely detract from plaintiff's claim that it was ready and willing to pursue contract negotiations in a commercially reasonable manner.

There is nothing in the record to indicate that Otis was motivated by other than legitimate business concerns. Based on the "record taken as a whole," this factual dispute does not give rise to a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Summary judgment for defendant is warranted with respect to plaintiff's claims under 42 U.S.C. §§ 1981 and 1982. Plaintiff has neither alleged nor argued that defendant was motivated by an intent to discriminate against Clifton Terrace residents. Proof of purposeful discrimination is required to recover under these statutes. In addition, while Otis has offered substantial evidence that it had legitimate business reasons for refusing to contract with plaintiff, plaintiff has in no significant way controverted this proof. When the defendant offers adequate proof of legitimate business purpose and the plaintiff fails to set forth any specific facts that would warrant finding that the proffered justification is merely pretextual, summary judgment is appropriate. *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987); *Irizarry v. Palm Springs Gen. Hosp.*, 680 F.Supp. 1528, 1531 (S.D.Fla.1988). Plaintiff's claims under §§ 1981 and 1982 are accordingly dismissed.

### C. *The D.C. Human Rights Act*

■ In Count III, plaintiff alleges that defendants have violated scattered provisions of the D.C. Human Rights Act (DCHRA), D.C.Code § 1–2501 *et seq.* Complaint ¶¶ 41–44. Plaintiff's allegations concentrate on various clauses of § 1–2511 ("Equal Opportunities"), § 1–2515 ("Unlawful Discriminatory Practices in Real Estate Transactions") and § 1–2519 ("Unlawful Discriminatory Practices in Public Accommodations"). The DCHRA makes it unlawful for any person to discriminate, on the basis of race and location, in the performance or nonperformance of various services.

In *United Planning Org. v. District of Columbia Comm'n on Human Rights*, 530 A.2d 674 (D.C.1987), the District of Columbia Court of Appeals stated that to make out a prima facie case of discrimination, a complainant in an employment discrimination case must prove four elements: "(1) that she was a member of a protected class; (2) that she applied for a job for which she was qualified; (3) that she was rejected in favor of another applicant; and (4) that a substantial factor in the employment decision was her membership in the protected class." *Id.* at 677; *see also King v. Palmer*, 778 F.2d 878, 880 (D.C.Cir.1985). By analogy to a case such as this in which plaintiff alleges the discriminatory refusal to deal, it would seem that plaintiff must show at least the following: (1) that it is a member of a protected class; (2) that it applied for services which it was qualified to receive; (3) that the services were denied to plaintiff; and (4) that a substantial factor in the decision not to provide services was plaintiff's membership in the protected class.

Plaintiff Clifton Terrace Associates, a white-owned business, does not allege that it is a member of a "protected class." In addition, plaintiff points to no authority to support its apparent view that Clifton Terrace Associates has standing under the DCHRA to litigate the housing rights of its tenants. In the Court's view, it is doubtful whether these provisions of the DCHRA were even intended to apply to a defendant such as Otis—an uninvolved third party with no ownership interest, no landlord status, and no duty under contract to provide elevator service.

More important, the provisions of the DCHRA on which plaintiff relies are once again belied by plaintiff's own statement of the case. Not surprisingly, the discriminatory acts prohibited by the DCHRA are made unlawful only if done "wholly or partially for a discriminatory reason based on the race, color, religion, national origin, sex, age, [etc.]" of any individual. D.C. Code § 1–2515(a). This is further emphasized by § 1–2503 ("Exceptions") which states:

 . Any practice which has a discriminatory effect and which would otherwise be pro-

hibited by this chapter shall not be deemed unlawful if it can be established that such practice is not intentionally devised or operated to contravene the prohibitions of this chapter and can be justified by business necessity.

D.C.Code § 1–2503(a). As noted above, plaintiff neither alleges nor argues that Otis was motivated by a discriminatory intent. Rather, plaintiff argues that Otis's actions resulted in a discriminatory effect. Moreover, while Otis has pointed to substantial evidence to show that its refusal to deal with Clifton Terrace Associates was justified on business grounds, plaintiff has pointed to nothing that would controvert this.

For the same reasons plaintiff fails to establish a prima facie case under 42 U.S.C. §§ 1981 and 1982, plaintiff's claims under the D.C. Human Rights Act are properly dismissed.

### D. The D.C. Consumer Protection Procedures Act

■ Count IV alleges that defendants by their actions are committing unfair trade practices in violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28–3901 *et seq.* In particular, plaintiff alleges violations of scattered clauses of § 28–3904. Complaint at ¶¶ 47–51. This claim is premised on plaintiff's belief that while Otis holds itself out as providing ongoing maintenance to elevators it sells and installs, "in fact it reserves (without disclosure) the right to discriminate against certain owners of Otis elevators." Plaintiff's Opposition Memorandum, at 31.

Plaintiff's claims are without merit. This Court has held that the legislative history of the CPPA, along with a consistent reading of its provisions, unequivocally indicates that the CPPA was intended to protect consumer-plaintiffs only, and not corporations. *Independent Communications Network, Inc. v. MCI Telecommunications Corp.,* 657 F.Supp. 785, 787 (D.D.C. 1987) (Gasch, J.); *see also Howard v. Riggs National Bank,* 432 A.2d 701, 709 (D.C. 1981) (CPPA designed to police trade practices arising only out of consumer-mer-

chant relationships). Plaintiff Clifton Terrace Associates, Ltd. is a limited partnership under the auspices of the Marshall Blackwell Group, which owns or manages some 7500 low and moderate income housing units. Plaintiff's affidavits establish that the Marshall Blackwell Group has available liquid assets in excess of $5 million. Declaration of George F. Marshall, at ¶ 3. Since plaintiff is not a consumer within the meaning of the CPPA, its claims thereunder are properly dismissed.

### E. Plaintiff's Common Law Claims

■ In Count V, plaintiff alleges that defendants have violated an implied "warranty of continued service" along with an implied "warranty of fair dealing." Complaint at ¶¶ 54–59.

There is no contract between the parties to this dispute, and plaintiff refers to only one case to support its novel claims. In *Hais v. Smith,* 547 A.2d 986 (D.C.1988), the District of Columbia Court of Appeals acknowledged that District of Columbia law recognizes a contractual covenant of good faith and fair dealing. *See id.* at 987. Plaintiff argues that "no leap is involved to recognize that same duty as inherent in the continuing relationship of a buyer and seller, or their assigns." Plaintiff's Opposition, at 36. In other words, "plaintiff may properly enforce against Otis the covenant running with the elevator." *Id.*

This leap in logic is without merit. *Hais* involved a contract. This case does not. Absent a contract, Otis had no duty to repair the Clifton Terrace elevators under an implied warranty theory. Because no such cause of action exists, plaintiff has failed to state a claim for breach of an implied warranty.

■ Finally, in Count VI plaintiff alleges that defendants' actions are "unconscionable" in violation of public policy. Complaint at ¶¶ 62–63. Unconscionability is a doctrine under which a party to an existing contract seeks to avoid its obligations thereunder. *See Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965). Because there was no contract in this case, the doctrine of

unconscionability does not apply. Plaintiff has failed to state a claim for relief under a theory of unconscionability.

## CONCLUSION

Plaintiff's claims do not fall within the scope of the Fair Housing Act or the D.C. Consumer Protection Act, and those claims are properly dismissed. Plaintiff neither alleges nor argues that defendant's refusal to deal was motivated by a discriminatory intent. Moreover, plaintiff has failed to negate defendant's showing that its actions were motivated by legitimate business concerns. Summary judgment for defendant on plaintiff's claims under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, and the D.C. Human Rights Act, D.C.Code § 1–2501 *et seq.*, is therefore warranted. Finally, plaintiff's common law claims for breach of warranty and unconscionability are without support under the law. They are accordingly dismissed.