Michael BULLOCK, Appellant,

v.

NATIONAL CITY MORTGAGE
COMPANY, Appellee.

No. 97–CV–1533.

District of Columbia Court of Appeals.

Argued Oct. 28, 1998.
Decided Aug. 19, 1999.

Before STEADMAN and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

RUIZ, Associate Judge:

Appellant, Michael Bullock, brought a negligence action against appellee, National City Mortgage (NCM), claiming that it failed to timely submit certain information to the Department of Housing and Urban Development (HUD) necessary to obtain FHA insurance, that the absence of such insurance made Bullock ineligible for the HUD mortgage assistance program,[1] and that this failure resulted in the foreclosure of his home when he was unable to meet his mortgage payments. The trial court awarded summary judgment in favor of NCM on the ground that the only commitment Bullock had received from HUD was in 1991, prior to the purchase of his home. Bullock contends, and we agree, that the trial court improperly granted summary judgment because there are genuine issues of material fact as to whether he would have qualified for the HUD program and received a favorable repayment plan that would have avoided foreclosure but for NCM's negligence. Therefore, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

I.

On March 22, 1991, Bullock purchased a home located at 1209 Orren Street, N.E., in Washington, D.C. Appellant obtained a Home Purchase Assistance Program loan from the D.C. Local Development Corporation in the amount of $18,548.15,[2] and NCM was the mortgagee for the rest of the purchase price ($67,950) of the property. Pursuant to the mortgage agreement, Bullock was required to make monthly

Michael Bullock, pro se.

Steven R. Becker, with whom Nihar R. Mohanty was on the brief, Washington, DC, for appellee.

1. Under the HUD mortgage assistance program, mortgagees could assign certain delinquent mortgages to HUD and HUD would arrange a repayment plan in an attempt to accommodate the mortgagor.

2. This loan was immediately assigned to the District of Columbia Department of Housing and Community Development.

payments of $516.47. In the month prior to closing, NCM and Bullock signed a HUD/FHA application for mortgage insurance.[3] In addition, a Certificate of Commitment (for HUD-insured mortgage), listing NCM as the lender, was completed,[4] as well as a settlement statement (HUD Form-1) signed by Bullock, as purchaser, the selling homeowner, and a NCM representative.[5] These three items must be submitted to HUD by the mortgagee in order to obtain a mortgage insurance certificate.[6]

Bullock began to default on his monthly mortgage payments in March 1992, one year after purchasing his home. On June 2, 1992, Inter–City Mortgage (ICM), who had bought the mortgage from NCM, notified Bullock that if he did not pay $2,305.80 in back payments and late charges, he risked foreclosure. This same notice also informed Bullock that if he had missed his mortgage payments through no fault of his own, he might be eligible for the HUD mortgage assistance program. After reviewing Bullock's case, ICM filed a request for HUD mortgage assistance on Bullock's behalf.[7] On September 30, 1993, HUD informed ICM that it would not accept assignment of appellant's mortgage because the property was not FHA-insured. Subsequently, ICM sold Bullock's mortgage back to NCM because NCM was unable to provide it with a mortgage insurance certificate.

On May 20, 1994, NCM submitted the required information to HUD to initiate a mortgage insurance review. On May 25, 1994, HUD declined to endorse Bullock's mortgage note because NCM did not submit a statement showing that Bullock's payments were current. NCM could not submit this statement, however, because Bullock was in default on his mortgage payments. On June 8, 1994, NCM informed Bullock that HUD would not in-

3. This document was signed on February 22, 1991.

4. The date on the Certificate of Commitment is March 5, 1991.

5. The settlement agreement is also dated February 22, 1991.

6. To file a request for endorsement, "[t]he lender must place the processing and closing documents for the case in the uniform case binder and submit it with a request for endorsement to the local HUD Field Office." HUD Handbook No. 4165.1 REV–1, *Endorsement for Insurance for Home Mortgage Programs (Single Family)*, at p. 2–1, § 2–1 (April 1992). The required "processing and closing" documents in this case consist of a property appraisal, an application for insurance of the mortgage, a certified copy of the mortgage and note, an underwriter certification that the proposed mortgage complies with HUD underwriting requirements, and a mortgagee certification, all of which must be on forms prescribed by the HUD Secretary. *See* 24 C.F.R. § 203.255(b)(1)-(13) (1998); *see also* HUD Handbook, No. 4165.1 REV–1, *supra*, at p. 2–1, § 2–1 ("The HUD Field Office will endorse or not endorse the case after review of the package.")

Although, according to Bullock, NCM informed him that it had mailed his mortgage insurance case file/application to HUD in April 1991, there is no documentation of this fact in the record. HUD's rejection of Bullock's application for mortgage assistance because of the absence of FHA insurance, when coupled with the fact that, when NCM did apply for insurance in 1994 and the application was denied, the only reason apparent from the record is that he was not then current in his mortgage payments, undermines the claim that NCM filed the appropriate papers in 1991, but that the insurance nevertheless was not issued. In any event, on appeal, NCM does not contend that it filed the insurance application in April 1991, only that its doing so in 1994 satisfied whatever obligation it owed to Bullock.

7. To qualify for the HUD mortgage assistance program, a mortgagor must first provide relevant financial and other information to the mortgagee who reviews and evaluates whether the mortgagor is a candidate for foreclosure. If so, and if the mortgagee deems the mortgagor qualified for the HUD mortgage assistance program, the mortgagee may recommend the mortgagor to HUD. Once an assignment application has been submitted by the mortgagee, HUD instructs the mortgagee not to foreclose while it evaluates the application against specified criteria. *See* HUD Handbook No. 4330.1 REV–5, *Administration of Home Mortgages*, at pp. 8–19–8–20, § 8–7 (Sept.1994).

sure his loan because he had been in continuous default since January 1992. NCM also initiated default negotiations with Bullock. On December 21, 1994, NCM outlined its understanding of the terms of the payment plan:

1. Monthly payments of $225.46 on the past-due amounts for the next 36 months beginning January 1, 1995.

2. $2,750 repayment assistance from D.C. Human Services, Emergency Services to be posted to the past-due account.

3. NCM discontinues its offer to obtain a mortgage insurance premium (MIP) refund from HUD on Bullock's behalf, but will apply for HUD/FHA mortgage insurance upon the successful completion of the repayment terms on the condition that Bullock provide six months of timely payments after the completion of the delinquency repayment.[8]

4. Additional monthly payments in the amount of $542.89.

On January 31, 1995, NCM informed Bullock that it had not received the January payment, and that if it did not receive the January and February payments by February 3, 1995, it would initiate foreclosure. On February 7, 1995, NCM informed Bullock that he had defaulted under the note and the mortgage by not paying the monthly installment payments since March 3, 1992, and by not complying with the December 21, 1994 repayment plan. After NCM foreclosed on Bullock's home, Bullock initiated this action against NCM in November 1995.[9]

---

8. In a letter dated October 24, 1994, Bullock accepted the NCM repayment plan with the understanding that within six months after the plan was completed, his loan from NCM would become FHA-insured. There is no evidence in the record, however, that appellant accepted the terms in NCM's December 21, 1994 letter.

9. On June 16, 1995, Bullock filed for Chapter 13 bankruptcy. The bankruptcy petition was dismissed with prejudice on June 21, 1996, because of Bullock's material default of his bankruptcy reorganization plan payments.

## II.

We review a grant of summary judgment *de novo, see Ferrell v. Rosenbaum,* 691 A.2d 641, 646 (D.C.1997), applying the same standard as the trial judge. *See Bailey v. District of Columbia,* 668 A.2d 817, 819 (D.C.1995). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Super. Ct. Civ. R. 56(c); *see also Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). In determining whether any material facts are in dispute, we view the entire record in the light most favorable to the party opposing the motion. *See Colbert v. Georgetown Univ.,* 641 A.2d 469, 472 (D.C. 1994) (en banc).

■ Bullock contends that he provided sufficient facts to preclude summary judgment on his negligence claim. "Such a claim requires proof of a duty of care, breach of that duty, and injury proximately caused by that breach." *See Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 628 (D.C.1997); *see also Powell v. District of Columbia,* 634 A.2d 403, 406 (D.C.1993). Applying the standard for summary judgment to the elements of a negligence claim, we conclude that the trial court erred in dismissing Bullock's claim.[10]

### A. *Proximate Cause.*

■ Bullock's main contention on appeal is that there is a genuine issue of

---

10. Bullock's one-page *pro se* complaint refers to NCM's inaction as a "breach of contract." However, NCM, both in its motion for summary judgment and in its brief to us, discusses Bullock's claim in terms of a tort action. As the requisite elements in the context of this case are very similar for a contract as for a tort action, for purposes of this appeal we follow in the main the mode of analysis used by NCM, albeit with a different conclusion as to the propriety of granting summary judgment in the circumstances of this case.

material fact as to whether NCM's failure to submit his case file to HUD within sixty days of closing on the purchase of his home prevented him from qualifying for the HUD mortgage assistance program. The trial court found that Bullock had not made a *prima facie* showing of proximate cause because he provided no evidence to indicate that he had a commitment from HUD after the purchase of his home. Proximate cause encompasses both cause in fact and policy considerations limiting the liability of persons who have, in fact, caused the injury, but in circumstances where the chain of events is too attenuated. *See Lacy v. District of Columbia,* 424 A.2d 317, 320–21 (D.C.1980). "In determining whether there has been cause in fact, the plaintiff is not required to prove causation to a certainty." *Ferrell, supra,* 691 A.2d at 650. The appropriate test is whether the plaintiff can prove, by a preponderance of the evidence, "that the asserted negligence was a substantial factor in causing the injury." *Id.* (citing *Lacy, supra,* 424 A.2d at 318–19).

The record clearly indicates that HUD denied Bullock's mortgage assistance application because he did not have FHA insurance. The record also indicates that NCM had all the information necessary to submit Bullock's case file to apply for the insurance within sixty days of the closing date. There is no indication in the record that Bullock's mortgage would not have been endorsed by HUD for FHA insurance had NCM timely filed the required documents in 1991. Further, as evidenced by HUD's refusal to endorse Bullock's mortgage when NCM late-filed Bullocks's insurance application in 1994, when he had accumulated a period of nonpayment, Bullock was prejudiced by the delay. Given these facts, the fact-finder could determine that NCM's failure to timely submit Bullock's case file to HUD was a substantial factor that "interfered with [Bullock's] chance" to receive mortgage assistance from HUD. *See Ferrell, supra,* 691 A.2d at 652.

NCM counters that even if Bullock had been FHA-insured, he failed to show that he would have met all the eligibility requirements necessary to obtain HUD mortgage assistance.[11] NCM argues, first, that Bullock provided no evidence to suggest that his March 1992 default was due to family illness. *See* HUD Handbook No. 4330.1 REV–5, *supra* note 7, at p. 8–16, § 8–7 ("The default must have been caused by a circumstance or set of circumstances beyond the mortgagor's control."). The record belies this claim. As Bullock indicated in his Opposition to Defendant's Motion for Summary Judgment, there is record evidence that the initial default was due to family health problems; the record contains 1) a Request for Financial Information form, dated October 7, 1993, in

11. The HUD mortgage assistance eligibility requirements are as follows:
  1. The mortgagee must have indicated to the mortgagor its intention to foreclose the mortgage.
  2. After any partial payments that may have been accepted from the mortgagor have been applied to the mortgage, at least 3 full monthly installments must remain due and unpaid on the mortgage.
  3. The property is the mortgagor's principal residence.
  4. The mortgagor does not own other property subject to a mortgage insured or held by HUD.
  5. The default must have been caused by a circumstance or set of circumstances beyond the mortgagor's control which rendered the family unable to cure the delinquency within a reasonable time or make full mortgage payments.
    a) Curtailment of family income;
    b) Uninsured damage to the mortgaged property;
    c) Expenses related to death or illness;
    d) Unanticipated increase in payments to mortgage escrow account.
  6. There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a temporary period of reduced or suspended payments, not exceeding 36 months, and will be able to pay the mortgage in full by its original maturity date extended, if necessary, by up to 30 years.
*See* HUD Handbook No. 4330.1 REV–5, *supra* note 7, at pp. 8–11–8–17, § 8–7.

which Bullock reiterates that the default was the result of a family illness; and 2) a letter to NCM, dated September 1, 1993, in which Bullock again refers to family health emergencies to explain his default.[12] Moreover, the fact that ICM referred Bullock's case file to HUD suggests that, after reviewing Bullock's financial and medical information, ICM determined that he met the eligibility criteria required for the program. *See* HUD Handbook No. 4330.1 REV–5, *supra* note 7, at p. 8–19, § 8–7 ("The mortgagee shall evaluate each of the eligibility criteria separately and shall document its conclusions" before requesting that HUD accept assignment of the mortgage.). Thus, the circumstantial evidence contained in the record is sufficient to indicate that Bullock's eligibility for the HUD mortgage assistance program is a material fact in dispute.

■ NCM next maintains that because Bullock's salary actually increased and his medical expenses decreased in December 1992, his improving financial position would have precluded him from qualifying for the HUD mortgage assistance program. This claim is without merit. Eligibility for the program is triggered by a mortgagee's desire to foreclose after a mortgagor defaults on at least three monthly mortgage payments. *See* HUD Handbook No. 4330 .1 REV–5, *supra* note 7, at p. 8–14, § 8–7 (noting that "at least 3 full monthly installments must remain *due and unpaid* on the mortgage" for a mortgagor to be eligible for the program) (emphasis added). A mortgagor's subsequent financial status is not part of the calculus, except to determine whether there is a reasonable prospect that the mortgagor

will be able to resume full mortgage payments within a 36–month period and will be able to pay the mortgage in full by its original maturity date plus 10 years. *See* HUD Handbook No. 4330.1 REV–5, *supra* note 7, at p. 8–17, § 8–7; *see also id.* at p. 8–11, § 8–7 ("The criteria listed [in this section] are the *only* criteria on which eligibility for assignment may be based. No other criteria may be considered and the facts relied upon must be related specifically to these criteria.").

In this case, Bullock defaulted in March 1992 and continued to default through May 1992. Therefore, as of June 1992, Bullock qualified for the HUD mortgage assistance program as long as he could show that the default was caused by circumstances "beyond [his] control," such as family illness, which "rendered the family unable to cure the delinquency within a reasonable time." HUD Handbook No. 4330.1 REV–5, *supra* note 7, at p. 8–16, § 8–7. Bullock's financial status nine months later, as of December 1992, would be largely irrelevant to this assessment, but would be taken into account in determining the prospect that Bullock would resume payment.[13] Thus, a post-default increase in income would promote rather than destroy his eligibility for the program. *See id.* at 8–17, § 8–7 ("Future ability to pay is the key factor ... not present income or credit history."). Therefore, Bullock's improved financial situation as of December 1992 would not have precluded him from qualifying for the HUD mortgage assistance program. Based on the plain language of the regulations, we conclude that Bullock made a showing sufficient to withstand summary judgment that NCM's negligence was a

---

**12.** NCM contends that Bullock conceded that he has no documentation of medical expenses related to the family illness. Bullock does admit that he has no documentation at this time; however, he also informed NCM that he had the documentation when ICM referred his case to HUD, but it was subsequently "water-damaged" and he has been unable to obtain copies from HUD.

**13.** The record does not reveal when ICM submitted the application to HUD for mortgage assistance. However, ICM notified Bullock in June 1992 that he might be eligible for the HUD program and, according to NCM, ICM notified NCM in February 1993 that HUD had denied the application. In addition, HUD informed ICM of the reason for the denial of Bullock's assignment application in September 1993.

substantial factor in preventing him from qualifying for the HUD mortgage assistance program.

## B. *Duty.*

■ NCM does not argue that it had no duty to seek mortgage insurance for Bullock, but instead contends that it was not required to submit Bullock's case file to HUD within sixty days of closing. NCM argues that it fulfilled its duty to Bullock when it submitted his mortgage to HUD in May 1994, even though it was over three years after closing.[14] *See Kerrigan, supra,* 705 A.2d at 628–29 (person liable to another for negligence only if person owes duty of care). In support of this contention, NCM notes the late endorsement provision in the HUD Handbook. *See* HUD Handbook No. 4165.1 REV–1, *supra* note 6, at p. 3–1, § 3–1. While HUD does permit late endorsement requests, it does so only if the mortgagee provides additional proof that "the degree of risk to HUD is no greater than existed at the time of closing." *Id.* A mortgage that is in default when submitted for endorsement will not be insured unless HUD was "demonstrably responsible for [the] delayed request for endorsement." *Id.*

The fact that the payment history requirement is more burdensome for insurance applications that are filed more than sixty days after closing and that HUD considers such an application to be a "delayed request" indicates that late insurance applications are disfavored by the agency. *See* 24 C.F.R. § 203.255(b) (1998); HUD Handbook No. 4165.1 REV–1, *supra* note 6, at p. 3–1, § 3–1.[15] In

order to provide the most favorable climate to a mortgagor's insurance application, the mortgagee therefore must file within sixty days of closing. There is no reason apparent in the regulations why HUD would not have issued a mortgage insurance certificate had NCM submitted Bullock's case file within sixty days of closing. In fact, when NCM eventually filed for insurance three years later, HUD rejected the application because NCM submitted a "delayed request" and was then unable to show that Bullock's mortgage payments were current—a problem that would not have existed if the insurance application had been filed within sixty days of closing. These factors support that NCM had a duty to file Bullock's application for insurance within sixty days of closing in order to avoid prejudicing Bullock's chances of obtaining mortgage insurance securing his debt to NCM.

NCM's actions before the March 22, 1991 closing also support a breach of duty claim. On February 22, 1991, one month prior to closing, NCM asked Bullock to complete and sign a settlement statement (HUD–1 form) and an HUD/FHA application for mortgage insurance, both of which are required to obtain a HUD-insured mortgage. See note 6, *supra.* The preparation of the documents at this time suggests the intention to submit Bullock's case file to HUD within the favored sixty-day period. In addition, a Certificate of Commitment for a HUD–Insured Mortgage, which expired on August 14, 1991, was completed on March 5, 1991, several weeks before closing. This, too, indicates that

14. NCM incorrectly asserts that it submitted Bullock's "mortgage for assignment to HUD, but HUD would not accept the assignment because of his default in payments." In fact, it was ICM, not NCM, that first recommended Bullock for the HUD mortgage assistance program, but HUD refused to consider Bullock because he was not FHA-insured. Subsequently, NCM submitted Bullock's closing documents to HUD to obtain a mortgage insurance certificate. It was this untimely application for insurance that HUD denied because Bullock was in default on his loan.

15. The applicable HUD regulations provide that the mortgagee shall submit applications for insurance to the Secretary "within 60 days after the date of closing of the loan or [within] such additional time as permitted by the Secretary." 24 C.F.R. § 203.255(b). The Secretary allows late requests for endorsement only if "the degree of risk to the Department is no greater than existed at the time of closing." HUD Handbook § 4165.1 REV–1, *supra* note 6, at 3–1, § 3–1.

the parties intended that the insurance application would be submitted shortly after closing, and, in any event, no later than the expiration of the Certificate of Commitment in August 1991. If so, NCM breached its duty to timely submit Bullock's case file by failing to provide any information to HUD until three years after the closing date. Because the record demonstrates that material facts are in dispute as to whether NCM breached a duty to Bullock,[16] the trial court erred in granting summary judgment.

## C. *Injury.*

■ Finally, NCM contends that even if it breached a duty to Bullock, he offered no concrete evidence of damages resulting from this breach. See *Kerrigan, supra,* 705 A.2d at 628; *Powell, supra,* 634 A.2d at 406. Bullock maintains, *inter alia,* that he would have received a more lenient payment plan if his mortgage had been assigned to HUD, than he received from NCM. NCM responds by asserting that the repayment plan it offered to Bullock was substantially similar to what his repayment options would have been under the HUD mortgage assistance program. NCM's final repayment plan consisted of a $225.46 monthly payment on the past-due amount for thirty-six months beginning January 1, 1995, as well as continued monthly mortgage payments in the amount of $542.89. Additionally, NCM offered to obtain $2,750 in repayment assistance from the District to apply to the arrears. NCM also pledged to file for FHA mortgage insurance after appellant successfully completed the terms of the plan, and to forgive

$10,000 in accrued interest and late charges.

Neither NCM nor Bullock offers any evidence of exactly what the HUD repayment plan would have been if Bullock had been admitted to the mortgage assistance program. Bullock does argue, however, that under the HUD program, he would have had FHA mortgage insurance. See part II.A, *supra.* In addition, it is clear from the HUD Handbook that mortgagors in the program can have a temporary period of reduced or suspended payments of up to thirty-six months. See HUD Handbook No. 4330.1 REV–5, *supra* note 7, at p. 8–17, § 8–7. Given that Bullock was earning approximately $1,400 per month in 1992, it is unlikely that HUD would have found that he was entitled to make no payments during the thirty-six month recovery period. Whether he would have been required to pay more than the $760 per month that NCM required in its payment plan—an amount that was not a reduction but an increase in monthly payments—however, is an open question. Moreover, there is no evidence in the record to suggest that a mortgagor would not be entitled to some form of loan forgiveness or aid in obtaining repayment assistance from the District if the mortgagor were also participating in the HUD program. Therefore, there is at least a question of fact as to whether Bullock would have obtained better repayment terms from HUD than from NCM. Because there are material facts in dispute regarding the damages Bullock may have suffered from not qualifying for the HUD mortgage assistance program, we hold that

---

**16.** As the above discussion demonstrates, given a duty to seek mortgage insurance as admitted by NCM, the question in a tort analysis is the scope of that duty and in a contract analysis whether the agreement at least impliedly includes making a timely filing. *Cf. Hais v. Smith,* 547 A.2d 986, 987 (D.C.1988) (per curiam) (recognizing, in the context of loan relationship, that " 'in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other

party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing' ") (quoting *Uproar v. National Broad. Co.,* 81 F.2d 373, 377 (1st Cir.1936)). *See also Kerrigan, supra,* 705 A.2d at 626 n. 2 (recognizing implied covenant of good faith and fair dealing in employment context). Either way, the relevant facts are sufficiently in dispute to preclude summary judgment. See note 10, *supra.*

the trial court erred in granting summary judgment.

Viewing the evidence in the light most favorable to appellant, *see Colbert, supra,* 641 A.2d at 472, we conclude that there are genuine issues of material fact in dispute as to whether NCM had a duty to apply for mortgage insurance within sixty days of closing, and, if so, whether NCM's breach of this duty prevented Bullock from qualifying for the HUD mortgage assistance program and a more lenient mortgage repayment plan. Accordingly, we reverse the trial court's dismissal of the case and remand for further proceedings.

*Reversed and remanded.*